UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
M&B PROPERTIES 3 BUSHEY LANE VT,
LLC, M&B PROPERTIES 6 LEE
BOULEVARD PA, L.P., and M&B
PROPERTIES 2729 PATTERSON STREET
NC, LLC,

**MEMORANDUM & ORDER**
2:18-CV-4187 (PKC) (RER)

Plaintiffs,

- against -

CWCAPITAL ASSET MANAGEMENT LLC,
WELLS FARGO, N.A., and U.S. BANK
NATIONAL ASSOCIATION, in its capacity as
Trustee, Successor-In-Interest to Bank of
America, N.A., as Trustee, Successor to Wells
Fargo Bank, N.A., as Trustee for the Registered
Lenders of Wachovia Bank Commercial
Mortgage Trust, Commercial Mortgage Pass-
Through Certificates,

Defendants.
----------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiffs M&B Properties 3 Bushey Lane VT, LLC, M&B Properties 6 Lee Boulevard PA,

L.P., and M&B Properties 2729 Patterson Street NC, LLC bring this diversity action against

Defendants CW Capital Asset Management LLC, Wells Fargo, N.A., and U.S. Bank National

Association alleging several state law causes of action including, *inter alia*, breach of contract,

promissory estoppel, and fraud.  Currently before the Court is Defendants' motion to dismiss

Plaintiffs' complaint in its entirety, with the exception of Plaintiff's sixth claim.  For the reasons

stated herein, Defendants' motion is granted in part and denied in part.

# BACKGROUND

## I.    Relevant Facts[1]

On March 13, 2007, Plaintiffs executed three loans (the "Loan Contracts") with non-party Wachovia Bank to facilitate the purchase of three properties located in Vermont, Pennsylvania, and North Carolina.  (Complaint ("Compl."), Dkt. 1, ¶¶ 26, 28–30.)  Each loan was secured by a mortgage on one of the properties.  (*Id.* ¶¶ 32–34.)  In total, the principal amount for all three loans was $4,080,000.  (*Id.* ¶¶ 28–30.)  Defendant U.S. Bank National Association is the successor in interest to Wachovia.  (*Id.* ¶ 27.)  Defendant Wells Fargo was the master servicer with respect to the loans (*id.* ¶ 38), while Defendant CW Capital was the special servicer (*id.* ¶ 55).  Both Wells Fargo and CW Capital were agents of U.S. Bank.  (*Id.* ¶¶ 40, 56.)  Plaintiffs' main contact with respect to the loans was Wells Fargo.  (*Id.* ¶ 39.)  As the master servicer, Wells Fargo had the actual or apparent authority to make agreements and representations on behalf of U.S. Bank with respect to the loans.  (*Id.* ¶¶ 40–41.)

The loans had a maturity date of April 11, 2017.  (*Id.* ¶ 44.)  The Loan Contracts also included several key provisions,[2] including a "No Waiver; Amendment" provision which provided

---

[1] The Court assumes the truth of the complaint's non-conclusory factual allegations.  *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (*en banc*).

[2] Plaintiffs did not provide a copy of the Loan Contracts or mortgages with their complaint. However, Defendants attached a copy of the North Carolina Loan Contract and mortgage to their motion to dismiss.  (Defendants' Memorandum of Law ("Defs.' Br."), Dkt. 18-4, at 4 n.2, 5 n.3; *see also* Defendants' Exhibit ("Defs.' Ex.") 1, Dkt. 18-2 (North Carolina Loan Contract); Defs.' Ex. 2, Dkt. 18-3 (North Carolina mortgage).)  Defendants assert that the North Carolina, Vermont, and Pennsylvania Loan Contracts are "virtually identical, and the provisions relevant to the determination of the issues raised by this [m]otion are identical."  (Defs.' Br., Dkt. 18-4, at 4 n.2.) Though Plaintiffs argue that Defendants' "[m]otion is facially deficient because Defendants fail to provide copies of the Loan Documents relating to the Pennsylvania Loan or the Vermont Loan" (Plaintiffs' Memorandum in Opposition ("Pls.' Br."), Dkt. 19, at 15 n.6), they do not contest that the Loan Contracts are identical.  Given that Plaintiffs refer to the Loan Contracts extensively in their complaint, the Court will consider the loan documents provided by Defendants for purposes

that "[t]his Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought." (Defs.' Ex. 1, Dkt. 18-2, at 11 (Section 3.1).)  The Loan Contracts also include a provision that a default under any of the three Loan Contracts constitutes a default as to all three loans.  (*Id.* at 8 (Section 2.1 "Events of Default") (noting that "should any other default occur under any other Loan Document . . . then an Event of Default (an '<u>Event of Default</u>') shall exist hereunder"); *see also id.* at 7 (Section 1.6 "Security") (stating that "[t]he Security Instrument, together with this Note and *all other documents to or of which Lender is a party or beneficiary now* or hereafter evidencing, securing, guarantying, modifying or otherwise relating to the indebtedness evidenced hereby, are herein referred to collectively as the 'Loan Documents'") (emphasis added).)  The mortgage agreement contains similar provisions regarding both oral modifications and defaults. (Defs.' Ex. 2, Dkt. 18-3, at 54 (Section 4.1(n)) (noting that a default occurs when "[a]n Event of Default occurs under any Additional Loan Document . . . executed in connection with any Additional Loan"); *id.* at 64 (Section 6.29 "Entire Agreement and Modifications") (noting that oral modifications are prohibited); *id.* at 65–66 (Section 6.35 "Cross-Collateralization") (noting that "this Mortgage shall also secure the following described additional loans (collectively, the '<u>Additional Loans</u>') . . . (a) [Vermont Loan]; and (b) [Pennsylvania Loan]").)  Finally, the Loan Contracts also provide that each of the Contracts are to be "interpreted, construed and enforced according to the laws of the state in which the property is located," *i.e.*, Vermont, North Carolina,

---

of this motion.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (noting that on a motion to dismiss, the Court may consider "documents that, while not explicitly incorporated into the complaint, are 'integral' to plaintiff's claims and were relied upon in drafting the complaint.") (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

and Pennsylvania. (Defs.' Ex. 1, Dkt. 18-2, at 12 (Section 3.6 "Governing Law"); Defs.' Ex. 2, Dkt. 18-3, at 62 (Section 6.11 "Governing Law").)

Beginning in October 2016, Plaintiffs and Wells Fargo entered into negotiations about refinancing all three loans. (Compl., Dkt. 1, ¶ 45.) On April 6, 2017, Plaintiffs and Wells Fargo reached an oral agreement (the "Oral Agreement") where Wells Fargo agreed that U.S. Bank would forbear from enforcing the Maturity Date and asserting Plaintiffs' default so long as "(i) the parties continued negotiating the terms of a refinancing in good faith and exchanging documents and information relating to [the] same; and (ii) Plaintiffs continued to send in monthly payments of principal and interest beyond the Maturity Date." (*Id.* ¶¶ 46–48.) In reliance on this Agreement, Plaintiffs made additional payments on the loans in April and May that they were not otherwise obligated to make under the original Loan Contracts. (*Id.* ¶¶ 48, 52.) Plaintiffs also continued negotiating the terms of the refinancing with Wells Fargo. (*Id.* ¶ 53.)

However, in a letter dated May 22, 2017, CW Capital asserted that Plaintiffs were in default for failing to pay off the loans by the maturity date. (*Id.* ¶ 57.) Upon further inquiry, Plaintiffs learned that CW Capital, despite knowing about the Oral Agreement reached between Plaintiffs and Wells Fargo, refused to acknowledge or honor the Agreement and insisted that Plaintiffs were in default. (*Id.* ¶¶ 58–60.) Plaintiffs allege that CW Capital "believed that it was not required to honor the Agreement, even though both CW Capital and Wells [Fargo] are agents of [U.S. Bank]." (*Id.* ¶ 61.) In response, Plaintiffs decided to pay off the loans in full and, on May 25, 2017, requested payoff statements for each of the loans. (*Id.* ¶¶ 63–64.) However, Defendants did not provide the statements. (*Id.* ¶ 65.) Finally, after multiple requests by Plaintiffs, Wells Fargo provided a payoff statement for the North Carolina loan on June 9, 2017. (*Id.* ¶¶ 66–67, 69–70.) On June 12, 2017, CW Capital also provided a payoff statement for the North Carolina loan. (*Id.*

¶ 73.)  Both the Wells Fargo and CW Capital statements included ordinary interest for the period of time that Defendants failed to provide the payoff statements, as well as default interest, and a $500 processing fee.  (*Id.* ¶¶ 71–72, 75.)  However, CW Capital's payoff statement also included several more charges including a "Late Charge (Balloon Payment)" of $47,355.56 and "Lender Expenses" of $8,332.43.  (*Id.* ¶¶ 76–77.)  On June 12, 2017, CW Capital also provided payoff statements for the Vermont and Pennsylvania loans that likewise included similar late and lender expenses charges.  (*Id.* ¶ 78.)

Despite Plaintiffs' numerous requests, Defendants refused to provide corrected payoff statements.  (*Id.* ¶¶ 80–84.)  Accordingly, on July 1, 2017, Plaintiffs paid the amount they believed properly due, including "(i) the full outstanding principal balance; (ii) all accrued ordinary interest through May 26, 2017; and (iii) the $500 payoff processing fee reflected on the payoff statements." (*Id.* ¶¶ 85–86.)  However, after this payment, Defendants refused to issue satisfactions of the mortgages reflecting that payment had been received in full.  (*Id.* ¶ 89.)  In response, Plaintiffs commenced an action in the Eastern District of New York seeking, *inter alia*, a declaration that Plaintiffs had satisfied their obligations under the loan documents with their July 2017 payment and an order directing Defendants to issue satisfactions of the mortgages.  (*Id.* ¶ 90.)  However, as that legal action was pending, Defendants' continued refusal to issue the mortgage satisfactions was causing Plaintiffs significant harm.  (*Id.* ¶ 93.)  For example, though Plaintiffs wished to refinance, Defendants' refusal to discharge the liens prevented Plaintiffs from closing on any such refinancing because all potential lenders required that the satisfactions on the mortgages be filed before they would close on a refinancing transaction.  (*Id.* ¶ 96.)  Though Plaintiffs informed Defendants of this continuing harm, Defendants continued to refuse to issue the satisfactions.  (*Id.* ¶¶ 98–99.)  As a result, Plaintiffs were "forced" to pay the remaining amounts allegedly due.  (*Id.*

¶ 100.) Plaintiffs were also "forced" to voluntarily dismiss their legal action without prejudice because Defendants refused to issue satisfactions while Plaintiffs' claims were pending in court unless Plaintiffs provided security in connection with Defendants' anticipated attorneys' fees for defending the pending action. (*Id.* ¶ 101.)

In anticipation of paying the allegedly due amounts, Plaintiffs requested "detailed payoff statements from Defendants, including a detailed breakdown and explanation of all amounts allegedly owed and appropriate back-up documentation for the fees and expenses charged." (*Id.* ¶ 103.) In response, Defendants provided "summary quotes listing lump-sum charges" that included $180,806.44 in unspecified "lender expenses." (*Id.* ¶ 105.) On April 12, 2018, Defendants provided another payoff statement with more detail that explained that a significant portion of the lender expenses included legal fees incurred by Defendants' counsel in defending the previously filed legal action. (*Id.* ¶ 106.) Plaintiff paid the full amount allegedly due on April 17, 2018 "subject to a full reservation of Plaintiffs' rights." (*Id.* ¶ 110; *see also id.* ¶ 100 (noting that Plaintiffs made the payment "under protest and subject to a full reservation of Plaintiffs' rights").) Defendants finally issued the satisfactions and discharged the liens on May 30, 2018. (*Id.* ¶ 117.)

## II.  Procedural History

Plaintiffs filed the instant action on July 23, 2018. (Dkt. 1.) On August 15, 2018, Defendants requested a pre-motion conference seeking to file a motion to dismiss. (Dkt. 8.) The Honorable Joan M. Azrack denied the pre-motion request and granted Defendants leave to file their motion to dismiss. (Oct. 9, 2018 Docket Order.) Defendants' motion to dismiss was fully briefed on January 11, 2019. (Dkts. 18, 19, 20.) The case was reassigned to the undersigned on March 21, 2019. (Mar. 21, 2019 Docket Order.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).

In addressing the sufficiency of a complaint, courts must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar*, 585 F.3d at 567. Nevertheless, a court "need not credit conclusory statements unsupported by assertions of facts or legal conclusions . . . presented as factual allegations." *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 404 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). At the pleadings stage, the Court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to plaintiff's claims and were relied upon in drafting the complaint." *Id*. (citing *Cortec Indus., Inc.*, 949 F.2d at 44).

**DISCUSSION**

Plaintiffs assert seven causes of action: (1) breach of the Oral Agreement; (2) promissory estoppel; (3) breach of the Loan Contracts; (4) fraud; (5) a violation of North Carolina General Statutes § 45-36.9 ("N.C. Gen. Stat. Ann. § 45-36.9"); (6) a violation of Title 27, Section 464 of the Vermont Statutes ("27 V.S.A. § 464"); and (7) a violation of Title 21, Section 721-6 of the Pennsylvania Statutes ("21 Pa. Stat. Ann. § 721-6"). Defendants do not seek to dismiss Plaintiffs' sixth cause of action, alleging a violation of 27 V.S.A. § 464. (*See* Defs.' Br., Dkt. 18-4, at 20–21.) However, Defendants argue that Plaintiffs' remaining claims should all be dismissed.

**I.  Voluntary Payment Doctrine**

Defendants first argue that Plaintiffs' first four claims—breach of the Oral Agreement, promissory estoppel, breach of the Loan Contracts, and fraud—are foreclosed by the voluntary payment doctrine. (Defs.' Br., Dkt. 18-4, at 7–10.) "Under the voluntary payment doctrine, a plaintiff may not sue for an overcharge if they voluntarily paid [the disputed charges] and 'do[ ] not allege that payment was made as a result of fraud, mistake of fact or law, or with protest.'" *Ortiz v. Ciox Health LLC*, No. 17-CV-4039 (DLC), 2018 WL 1033237, at *3 (S.D.N.Y. Feb. 22, 2018) (quoting *Morales v. Copy Right, Inc.*, 813 N.Y.S.2d 731, 732–33 (N.Y. App. Div. 2006)); *see also DRMAK Realty LLC v. Progressive Credit Union*, 18 N.Y.S.3d 618, 622 (N.Y. App. Div. 2015) (finding that plaintiff could not overcome the voluntary payment doctrine because "there is not a single allegation that [the plaintiff] protested the payment in such a way that he preserved his right to later sue to recover it").

Here, Plaintiffs allege that the payoff statements they were provided, and required to pay in order to receive the satisfactions of the mortgages, were fraudulent. (*See* Complaint, Dkt. 1, ¶ 69–79; *see also id.* ¶ 100 (noting that "Plaintiffs were forced to pay the full amounts allegedly due

and owing Defendants").)  Furthermore, Plaintiffs note that they paid the alleged amount "under protest and subject to a full reservation of Plaintiffs' rights."  (*Id.* ¶ 100.)  Therefore, Plaintiffs have adequately alleged that they protected their rights to sue.  *See Westfall v. Chase Lincoln First Bank, N.A.*, 685 N.Y.S.2d 181, 182 (N. Y. App. Div. 1999) (holding that plaintiffs' claims were barred by the voluntary payment doctrine when they "admit[ed] that they never actually gave any thought to the recording fee, or to defendants' basis for charging it" and they "never protested such charges"); *1300 Ave. P Realty Corp. v. Stratigakis*, 720 N.Y.S.2d 725, 727 (N.Y. App. Div. 2000) ("[The p]laintiff's opposition papers allege that payment in satisfaction of the mortgage was made to preserve the closing to refinance the mortgage, and under protest, and thus sufficiently raise issues of fact as to whether the payment . . . was voluntary.") (citing *Kilpatrick v. Germania Life Ins. Co.*, 183 N.Y. 163 (N.Y. 1905)).  Accordingly, the Court declines to dismiss Plaintiffs' first four claims pursuant to the voluntary payment doctrine.

## II.     Breach of the Oral Agreement

Defendants also argue that Plaintiffs' breach of the Oral Agreement claim should be dismissed because the Loan Contracts both prohibit oral modifications and are subject to the Statute of Frauds, which also requires that modifications of contracts be made in writing.  (Defs.' Br., Dkt. 18-4, at 10–14.)  Plaintiffs counter that their allegations of partial performance of the Oral Agreement takes the Agreement outside of the Statute of Frauds.  (Pls.' Br., Dkt. 19, at 16.) Plaintiffs also argue that Defendants, due to their fraudulent conduct, should be equitably estopped from arguing that the lack of a signed, written agreement bars Plaintiffs' claims.  (*Id.* at 17.)

The Court begins its analysis with the Vermont loan contract.[3] The loan contract is subject to the Vermont Statute of Frauds which requires that "[a] contract for the sale of lands . . . or of an interest in or concerning them" be written. 12 Vt. Stat. Ann. § 181(5). "Generally, changes in contracts covered by the Statute of Frauds are governed by the same formal requirements as the original contract." *North v. Simonini*, 457 A.2d 285, 287 (Vt. 1983). Therefore, "a modification of a contract within the Statute of Frauds must be written and signed to be enforceable." *Prue v. Royer*, 67 A.3d 895, 905 (Vt. 2013) (citing *Evarts v. Forte*, 135 Vt. 306, 310 (1977) and *Secrest v. Sec. Nat'l Mortg. Loan Trust 2002–2*, 84 Cal. Rptr. 3d 275, 282 (Cal. Ct. App. 2008)); *see also id.* (noting that in *Secrest*, a "written modification [of a mortgage contract was] unenforceable because [it was] unsigned by [the] lender"). Accordingly, the Oral Agreement between Plaintiffs and Wells Fargo modifying the Vermont Loan Contract is unenforceable under Vermont law.

Plaintiffs' arguments to the contrary are unavailing. For example, Plaintiffs argue, relying on *Mason v. Anderson*, that the use of the Statute of Frauds defense should be rejected when applying it "would operate to perpetrate a fraud rather than prevent one." (Pls.' Br., Dkt. 19, at 15−16 (citing *Mason v. Anderson*, 499 A.2d 783, 784 (Vt. 1985)).) However, in *Mason*, the Supreme Court of Vermont only applied a narrow exception to the Statute of Frauds:

> Under the Statute of Frauds, [a]n agreement not to be performed within one year from the making thereof must be evidenced by a writing signed by the party to be charged. An exception to this provision of the Statute of Frauds which is followed by a majority of jurisdictions is that complete performance by one of the parties to an alleged oral agreement takes the agreement out of the one-year provision of the Statute of Frauds.

---

[3] As noted *supra*, each of the loan contracts provides that it be "interpreted, construed and enforced according to the laws of the state in which the property is located," *i.e.*, Vermont, North Carolina, and Pennsylvania. (Defs.' Ex. 1, Dkt. 18-2, at 12 (Section 3.6); Defs.' Ex. 2, Dkt. 18-3, at 62 (Section 6.11).)

*Mason*, 499 A.2d at 784 (internal quotations and citations omitted). Here, that exception is unavailable to Plaintiffs given that their contract is subject to the Statute of Frauds under a different provision of 12 Vt. Stat. Ann. § 181.[4] Likewise, Plaintiffs' reliance on *Hayes v. Mountain View Estates Homeowners Association* is misplaced. In *Hayes*, the Supreme Court of Vermont outlined another exception to the Statute of Frauds, specifically related to contracts regarding an interest in land:

> A court may enforce an agreement regarding an interest in land if the party seeking enforcement shows "that (1) there was an oral agreement (2) upon which they reasonably relied (3) by changing their position so that they cannot be returned to their former position, and (4) the other party to the agreement knew of such reliance."

*Hayes v. Mountain View Estates Homeowners Ass'n*, 188 A.3d 678, 685 (Vt. 2018) (quoting *In re Estate of Gorton*, 706 A.2d 947, 951 (Vt. 1997)); *see also id.* ("Enforcement in these circumstances is justified on the ground that repudiation by one party after the other has fully performed amounts to a virtual fraud.") (internal quotation marks and citation omitted). Though Plaintiffs have

---

[4] Vermont's Statute of Frauds states that

[a]n action at law shall not be brought in the following cases unless the promise, contract, or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him or her lawfully authorized:

. . . .

(4) An agreement not to be performed within one year from the making thereof.

(5) A contract for the sale of lands, tenements, or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing.

12 Vt. Stat. Ann. § 181. In *Mason*, the Supreme Court noted that the relevant exception was only available for contracts subject to "*this provision* of the Statute of Frauds," *i.e.*, subpart (4) of § 181. 499 A.2d at 784 (emphasis added). The Contract Loan for the Vermont property, however, is also governed by subpart (5) of § 181, thereby making the exception in *Mason* inapplicable.

adequately alleged that they relied upon the Oral Agreement to their detriment (*see* Compl., Dkt. 1, ¶¶ 46–63), they have failed to show that their position was "a substantial and irretrievable change in position in reliance on the agreement" given that the only relief they seek is compensatory damages (*id.* at 23–24). *See In re Estate of Gorton*, 706 A.2d at 951 ("The reliance must be something beyond injury compensable by money to warrant enforcement of the contract despite the Statute of Frauds."). Plaintiffs have therefore failed to show that the Statute of Frauds should not be used to bar the enforcement of the Oral Agreement.

Finally, given that the Court has found the alleged oral modification of the Vermont Loan Contract unenforceable, it does not need to determine whether the Oral Agreement would be enforceable under North Carolina or Pennsylvania law. Plaintiffs do not contest that under the unambiguous terms of the Vermont Loan Contract, unmodified by the Oral Agreement, they defaulted by failing to pay the loans in full by the maturity date. (*Cf.* Compl., Dkt. 1, ¶ 49 (stating that if not for the Oral Agreement, Plaintiffs "would have paid the Loans off in full on or before the Maturity Date").) In light of the Loan Contracts' cross-default provisions (*see* Defs.' Ex. 2, Dkt. 18-3, at 54 (Section 4.1), 65–66 (Section 6.35)), Plaintiffs' default under the Vermont Loan Contract operates as a default under all three contracts which, in turn, bars their claim for breach of the Oral Agreement altogether.[5] Accordingly, Defendants' motion to dismiss as to Plaintiff's claim for breach of the Oral Agreement is granted.

---

[5] Defendants argue that, as a result of the Loan Contracts' cross-default provisions, a default under one Contract bars Plaintiffs' claim for breach of the Oral Agreement altogether. (Defs.' Br., Dkt 18-4, at 14.) Though Defendants provide no legal support for this assertion, Plaintiffs do not contest this application of the cross-default provisions to their breach of the Oral Agreement claim. (*Cf.* Pls.' Br., Dkt. 19, at 15–17 (arguing that Defendants have breached the Oral Agreement under Vermont, Pennsylvania, and North Carolina law); *see also* Defendants' Reply Brief, Dkt. 20, at 7 (noting that Plaintiffs did not address this specific issue).) In any event, the Court agrees with Defendants. The Loan Contracts' cross-default provisions ensure that Plaintiffs are in default of all three Loan Contracts for reasons independent of whether the law of

### III.     Promissory Estoppel

Defendants argue that Plaintiffs' claim for promissory estoppel should be dismissed because North Carolina, Pennsylvania, and Vermont "all preclude a party from invoking promissory estoppel when a valid contract exists." (Defs.' Br., Dkt. 18-4, at 14–15.)  Plaintiffs assert that their promissory estoppel claim is pled in the alternative as allowed under applicable law. (Pls.' Br., Dkt. 19, at 17–18.)  Plaintiffs also argue that their promissory estoppel claim is properly pled because "the promise at issue here is separate and distinct from the Loan Documents. Indeed the Loan Documents were executed in 2007, but the promise that underlies Plaintiffs' promissory estoppel claim was made approximately 10 years later." (*Id.* at 18.)

"The doctrine of promissory estoppel is applied to avoid injustice by making enforceable a promise made by one party to the other when the promisee relies on the promise and therefore changes his position to his own detriment." *Kraus Indus., Inc. v. Moore*, No. 06-CV-542 (NBF), 2007 WL 2744194, at *7 (W.D. Pa. Sept. 18, 2007) (internal quotations and citation omitted). However, "[p]romissory estoppel is an equitable remedy to be implemented only when there is no contract; it is not designed to protect parties who do not adequately memorialize their contracts in writing." *Id.* at *8 (internal quotations and citation omitted); *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000) ("Where there is no enforceable agreement between the parties because the agreement is not supported by consideration, the doctrine of promissory estoppel is invoked to

---

Pennsylvania or North Carolina would allow for the Contract to be modified by the Oral Agreement. This default accordingly prevents Plaintiffs from raising breach of contract claims against Defendants. *See McCausland v. Wagner*, 78 A.3d 1093, 1101 (Pa. Super. Ct. 2013) ("If a breach constitutes a material failure of performance, the non-breaching party is relieved from any obligation to perform; thus, a party who has materially breached a contract may not insist upon performance of the contract by the non-breaching party.") (citing *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 648 (Pa. 2009)); *Ball v. Maynard*, 645 S.E.2d 890, 897, *disc. review denied*, 656 S.E.2d 591 (N.C. 2007) ("It is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform.").

avoid injustice."); *Booe v. Shadrick*, 369 S.E.2d 554, 556 (N.C. 1988) ("If there is a contract between the parties the contract governs the claim and the law will not imply a contract."); *LoPresti v. Rutland Reg'l Health Servs., Inc.*, 865 A.2d 1102, 1119 (Vt. 2004) (noting "the well-established rule that promissory estoppel will not apply when the relationship of the parties is governed by a contract"). Accordingly, if a breach of contract claim and a promissory estoppel claim are pled in the alternative, "if the court finds that a contract exists, the promissory estoppel claim must fall." *Kraus Indus.*, 2007 WL 2744194, at *8. Here, there is no dispute as to the Loan Contracts' existence or validity. Rather, Plaintiffs and Defendants dispute what the terms of that contract are, but neither party asserts that no contract exists to govern the parties' relationship. *Cf. Forstmann v. Culp*, 648 F. Supp. 1379, 1384 (M.D.N.C. 1986) ("The key point is that promissory estoppel, if applicable, merely cures an absence of consideration. The doctrine does not operate to cure other defects in contract formation . . . ."). Accordingly, Plaintiffs cannot plead a claim of promissory estoppel where there are no allegations that a contract does not exist.

Further, Plaintiff's argument that the promise they relied on is "separate and distinct" from the contract is unavailing. Plaintiffs allege that Wells Fargo promised to forgo finding the Plaintiffs in default even if they did not pay off the loans in full by the Loan Contracts' maturity date. (*See* Compl., Dkt. 1, ¶ 48.) This promise modifies the contract; it is not separate and distinct from it. *See Kraus Indus.*, 2007 WL 2744194, at *8 (denying a motion to dismiss promissory estoppel claim when the claim focused on "future profitable contracts to perform the work"); *Ne. Power Co. v. Balcke-Durr, Inc.*, No. 97-CV-4836, 1999 WL 674332, at *10 (E.D. Pa. Aug. 23, 1999) (allowing promissory estoppel claim when there was both an original purchasing agreement and a promise to "monitor the condition and performance of the" purchased good). Therefore, Defendants' motion to dismiss as to Plaintiffs' second claim is granted.

## IV.    Breach of the Loan Contracts

Plaintiffs assert that even under the written Loan Contracts, unmodified by the Oral Agreement, Defendants are liable for breach of contract for a breach of the implied covenant of good faith and fair dealing.  (Compl., Dkt. 1, ¶¶ 139–43.)  Defendants argue that this claim should be dismissed because "[n]either North Carolina, Pennsylvania nor Vermont allow the implied covenant of good faith and fair dealing to override the express terms of the contract."  (Defs.' Br., Dkt. 18-4, at 16–17.)

Pennsylvania, North Carolina, and Vermont all recognize a breach of contract claim for the implied covenant of good faith and fair dealing when a party fails to perform its contractual obligations in good faith.[6]  *See, e.g.*, *Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 242 (Pa. Super. Ct. 2000) ("Every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement."); *Robinson v. Deutsche Bank Nat. Tr. Co.*, No. 52-CV-590, 2013 WL 1452933, at *11 (E.D.N.C. Apr. 9, 2013) ("Under North Carolina law, a covenant of good faith and fair dealing is implied in every contract.") (citing *Bicycle Transit Auth. v. Bell*, 333 S.E.2d 299, 305 (N.C. 1985)); *R & G Properties, Inc. v. Column Fin., Inc.*, 968 A.2d 286, 300 (Vt. 2008) ("The covenant of good faith and fair dealing is implied in every contract . . . .").  "The duty of good faith limits the parties' ability to act unreasonably in contravention of the other party's reasonable expectations."  *Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp.

---

[6] Defendant argues that Pennsylvania does not recognize a breach of the implied covenant of good faith and fair dealing as an independent cause of action.  (Defs.' Br., Dkt. 18-4, at 16.) However, Plaintiff does not bring such a claim.  (*See* Compl., Dkt. 1, at 18 (noting that Plaintiffs' third cause of action is a "breach of the Loan Documents" claim).)  Rather, Plaintiffs assert a breach of contract claim premised on the Defendants' failure to abide by this implied covenant. *See Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 472 n.5 (Pa. Super. Ct. 2015), *abrogated on other grounds*, 168 A.3d 146 (Pa. 2017) ("When a party fails to perform its contractual obligations in good faith, an action for breach of contract is the remedy.").

2d 504, 513 (E.D. Pa. 2012) (internal quotations, alterations, and citation omitted); *Cole v. Wells Fargo Bank, N.A.*, No. 15-CV-39 (MR), 2016 WL 737943, at *7 (W.D.N.C. Feb. 23, 2016) ("Courts have equated the covenant of good faith and fair dealing with an obligation to exercise discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties.") (internal quotations, alternations, and citations omitted); *L & B Truck Servs., Inc. v. Daimler Trucks N. Am. LLC*, No. 09-CV-74, 2009 WL 3584346, at *3 (D. Vt. Oct. 26, 2009) ("Thus, the covenant is an 'implied promise that protects against conduct which violates community standards of decency, fairness, or reasonableness.'") (quoting *Harsh Props., Inc. v. Nicholas*, 932 A.2d 1045, 1050 (Vt. 2007)). For example, "[t]he covenant of good faith may . . . be breached when a party exercises discretion authorized in a contract in an unreasonable way." *Montanez*, 876 F. Supp. 2d at 513 (interpreting Pennsylvania common law) (internal quotations, alterations, and citation omitted).

Here, Plaintiffs have sufficiently alleged a breach of contract claim for the breach of the implied covenant of good faith and fair dealing. Plaintiffs allege that in the course of negotiating for a refinancing of the Loan Contracts, Wells Fargo made a promise about how it would enforce the existing contract. (*See* Compl., Dkt. 1, ¶ 140.) This promise to forgo enforcing a default against Plaintiffs as long as they met certain conditions altered the expectations of the parties with respect to Defendants' exercise of their discretion under the Loan Contracts. Wells Fargo and CW Capital then not only violated that promise and Plaintiffs' reasonable expectations by asserting that Plaintiffs were in default for failing to pay the Loan Contracts in full by the maturity date, but also by insisting upon the payment of "exorbitant default interest, fees and expenses that were not actually due" before they would issue satisfactions of the mortgages. (*Id.* ¶ 141.) Defendants, of course, have a right to enforce the express written terms of the contract. However, "Defendants,

in exercising their right to choose to modify [Plaintiff's loans] . . . ha[ve] to do so in a reasonable manner in keeping with the expectations of the parties." *Robinson*, 2013 WL 1452933, at *12. Defendants' alleged failure to do so is enough to state a claim for breach of contract for the implied covenant of good faith and fair dealing. *See id.* (noting that a breach of contract claim under this theory should go forward when "the defendant's actions in telling the plaintiff, *inter alia,* that during the processing of the loan modification paperwork the defendant would abstain from foreclosing, created an obligation on defendant to actually stay foreclosure"); *L & B Truck Servs., Inc.*, 2009 WL 3584346, at *3 ("The purpose of the implied covenant of good faith and fair dealing is to ensure that parties act with faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.") (citing *Southface Condo. Owners Ass'n v. Southface Condo. Ass'n*, 733 A.2d 55, 58 (Vt. 1999)); *see id.* (noting that Vermont interprets the implied covenant broadly and that "[g]ood faith is ordinarily a question of fact"); *Kaplan v. Cablevision of PA, Inc.*, 318, 671 A.2d 716, 722 (Pa. Super. Ct. 1996) (noting that under Pennsylvania law, "examples of 'bad faith' conduct include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."); *cf. id* (noting that a party did not act in bad faith when it did not provide services and credit that it was "not contractually bound to provide . . . and that *they made no representations regarding the right to such credits*") (emphasis added).

Furthermore, Plaintiffs also argue that Defendants acted in bad faith by failing to provide payoff statements when requested and then delaying issuing the mortgage satisfactions after Plaintiffs paid all amounts allegedly due. (*See* Compl., Dkt. 1, ¶¶ 65–67, 82, 142.) These allegations are independently sufficient to allege a breach of the implied covenant. *See Cole*, 2016

WL 737943, at *8 (holding that a lender's failure to timely provide a mortgage payoff statement stated a claim for breach of the implied duty of good faith and fair dealing). Accordingly, Defendants' motion to dismiss as to Plaintiffs' third claim is denied.

## V.    Fraud

Defendants argue that Plaintiffs' fraud claim should be dismissed because they are unable establish the elements of common law fraud under New York state law.[7]  (Defs.' Br., Dkt. 18-4, at 18–20.)  However, even assuming *arguendo*, that Plaintiffs have stated a claim for fraud, Plaintiffs' claim must still be dismissed because

> under New York law, where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.

*Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) (internal quotations and citations omitted).  Plaintiffs argue that the "gravamen of Plaintiffs' fraud claim is that Defendants purposely induced them to forgo paying the Loans on the Maturity Date with the undisclosed intention of disregarding their promises not to call a default and seeking to collect exorbitant default interest and fees from Plaintiffs once the Maturity Date had passed."  (Pls.' Br., Dkt. 19, at 21 (citing Compl., Dkt. 1, ¶¶ 145–55).)  However, these are the same facts that Plaintiffs use to support their breach of contract claim.  (*See* Pls.' Br., Dkt. 19, at 20 (arguing that "Defendants engaged in fraudulent and bad faith conduct by, among other things, inducing Plaintiffs to forgo paying off the Loans by the Maturity Date so that Defendants could later assert a default and collect hundreds of thousands of dollars in bogus default interest and fees").)  Furthermore, Plaintiffs do not allege any damages that are distinct to their fraud claim.  "To maintain a claim of fraud in such

---

[7] The parties do not dispute that New York law applies to Plaintiffs' fraud claim. (*See* Defs.' Br., Dkt. 18-4, at 17–20; Pls.' Br., Dkt. 19, at 20–22.)

a situation, a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal quotations and citations omitted). Plaintiffs have failed to do that. *See Doukas v. Ballard*, 24 N.Y.S.3d 174, 175 (N.Y. App. Div. 2016) (dismissing fraud claim when "[n]ot only did the fraud causes of action asserted against [the defendant] arise out of identical circumstances as the causes of action alleging breach of contract, but they were based upon identical allegations, and did not allege that a misrepresentation resulted in any loss independent of the damages allegedly incurred for breach of contract; indeed, the damages sought were identical"). Accordingly, Defendants' motion to dismiss Plaintiff's fraud claim is granted.

## VI.    Statutory Violations

Finally, Defendants argue that Plaintiffs' fifth and seventh claims, seeking statutory damages under North Carolina and Pennsylvania law, should be dismissed.[8] Specifically, Defendants argue that Plaintiff's North Carolina statutory claim should be dismissed because Plaintiffs have failed to plead that Defendants did not comply with a statutory safe harbor provision. (Defs.' Br., Dkt. 18-4, at 20.) They also argue that Plaintiffs' Pennsylvania statutory claim should be dismissed because Plaintiffs' allegations show that Defendants provided a satisfaction on the Pennsylvania mortgage within 60 days of the full payment by Plaintiffs on April 17, 2018. (*Id.* at 21.) Defendants' arguments are unavailing.

Defendants does not provide any legal support for their assertion that Plaintiffs must plead that Defendants have failed to comply with the statutory safe harbor provision found in N.C. Gen.

---

[8] As noted *supra*, Defendants do not move to dismiss Plaintiffs' sixth claim, seeking statutory damages under Vermont law. (*See* Defs.' Br., Dkt. 18-4, at 20–21.)

Stat. Ann. § 45-36.12.[9]  Indeed, this argument is illogical.  As Plaintiffs note, the information required by § 45-36.12 "depends upon factual circumstances that are exclusively within the knowledge of Defendants."  (Pls.' Br., Dkt. 19, at 23.)  The language of the § 45-36.12 is more logically interpreted as an affirmative defense that a secured creditor can argue excuses its failure to provide a satisfaction as required by § 45-36.9.  *See Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'") (quoting *Black's Law Dictionary* 430 (7th ed. 1999)).  Therefore, the Court does not find that Plaintiffs were required to plead facts to show that Defendants did not comply with the safe harbor provisions of § 45-36.12 in order to adequately state a claim under § 45-36.9.

With respect to the seventh claim, Defendants' argument that they satisfied their obligations under the Pennsylvania statute elides the fact that Plaintiffs argue that it paid the true full amount due on July 1, 2017, almost a year before Defendants issued a satisfaction on the Pennsylvania mortgage.  (Pls.' Br., Dkt. 19, at 24.)  The question of when Defendants received "the entire mortgage obligation as well as all required satisfaction and recording costs," 21 Pa. Stat. Ann. § 721-6, is one of fact to be determined through this action.  The Court cannot simply accept Defendants' assertion that the full amount was not paid until April 2017 and that Defendants therefore complied with the statute.  Plaintiffs have adequately alleged that they paid the full

---

[9] N.C. Gen. Stat. Ann. § 45-36.12 provides that "a secured creditor is not liable under this Article if it: (1) Established a reasonable procedure to achieve compliance with its obligations under this Article; (2) Complied with that procedure in good faith; and (3) Was unable to comply with its obligations because of circumstances beyond its control."

amount due in July 2017 and the Court is obligated, at this stage of the proceeding, to credit that assertion. Dismissal at this stage would be improper.

Therefore, the Court finds that Plaintiffs have adequately pled violations of both the North Carolina and Pennsylvania statutes at issue. Accordingly, Defendants' motion to dismiss Plaintiffs' fifth and seventh claims is denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' third claim for breach of contract for the breach of the implied covenant of good faith and fair dealing, as well as their fifth, sixth, and seventh claims for North Carolina, Vermont, and Pennsylvania statutory violations will proceed. All other claims are dismissed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2019
Brooklyn, New York